J-A13042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1599 MDA 2022 |

Appeal from the Decree Entered November 3, 2022
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  059-ADOPT-2022,
060-ADOPT-2022

| | | |
|---|---|---|
| IN RE: C.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1600 MDA 2022 |

Appeal from the Decree Entered November 3, 2022
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  059-Adopt-2022

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: AUGUST 10, 2023**

C.S. ("Father") appeals from the November 3, 2022 decrees that involuntarily terminated his parental rights to his sons, K.S., born in February

_____

[*] Former Justice specially assigned to the Superior Court.

2020, and C.S., born in January 2014 (collectively, "Children").[1] In addition, Father's appointed counsel, Joseph L. Hitchings, Esquire ("Counsel"), has filed a petition to withdraw and accompanying brief, pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 602 Pa. 159, 978 A.2d 349 (2009). After careful review, we grant Counsel's petition to withdraw and affirm the termination decrees.

We glean the following factual and procedural history of this matter from the certified record. Cumberland County Children and Youth Services ("CYS" or "the agency") became involved with the family in December 2020 after receiving a referral that C.S. had 22 unexcused absences from school. Notes of Testimony ("N.T."), 11/1/2022, at 39, 86-87. On December 31, 2020, Mother obtained a temporary protection from abuse ("PFA") order against Father that named her and Children as protected persons.[2] ***See*** CYS Exhibit 10. In January 2021, the agency received another referral alleging that Father had violated the PFA order, noting behavioral concerns with C.S., and asserting a lack of supervision of K.S. N.T., 11/1/2022, at 41.

---

[1] On the same date, the court also terminated the parental rights of K.R. ("Mother"). Mother filed a timely appeal which we dispose of by separate memorandum.

[2] On February 3, 2021, Mother obtained a final protection from abuse order. ***See*** CYS Exhibit 10. However, she was the only protected person listed. ***See id.*** Due to a violation by Father, discussed *infra*, the PFA order does not expire until August 3, 2024. ***Id***.

Thereafter, on March 17, 2021, Mother brought C.S. to Holy Spirit Hospital for, as best we can discern from the record, psychiatric treatment. *See* CYS Exhibit 3-4. However, she did not stay with C.S. and after the hospital could not establish contact with her on March 18, it contacted the police to perform a welfare check on her and K.S., who remained in her care.[3] *Id*. Around 1:00 a.m. on March 20, police found Mother sleeping in her running car with K.S., who had just turned one year old. *Id.*; *see also* N.T., 11/1/2022, at 41.

Due to CYS's concerns of Father's domestic violence and Mother's mental health, the agency obtained protective custody of Children on March 19, 2021. N.T., 11/1/2022 at 41-42, 87. At the shelter care hearing on March 22, 2021, Father reported that he was able to care for Children. *See* CYS Exhibit 3-4. However, the agency had not seen his home or run clearances on the individuals who reside there. *Id*. Additionally, there were concerns regarding the PFA order against Father. *Id*. On April 6, 2021, the orphans' court adjudicated Children dependent. N.T., 11/1/2022, at 41.

In furtherance of Children's goal of reunification, Father was required to perform the following objectives: (1) comply with the provisions of the PFA

---

[3] Mother reported that C.S. has a history of physically aggressive behaviors. *See* CYS Exhibit 3-4. Two inpatient beds at the hospital became available during this time, however, because the hospital could not reach Mother, C.S. was not admitted. *Id*.

order and complete the AMEND program;[4] (2) obtain and maintain adequate housing; (3) attend and participate in school meetings; (4) submit to a drug and alcohol evaluation and follow any recommendations made; (5) cooperate with the agency; and (6) attend visitation. *Id.* at 90-107.

However, Father was unable to make meaningful progress. Primarily, on June 21, 2021, Father violated the PFA order. *See* CYS Exhibit 10. On this date, police arrived at Mother's home around 2:40 a.m. and found Father in the house. *Id*. He pled guilty to indirect criminal contempt for the violation on June 29, 2021. *See id*. Thereafter, on August 17, 2021, a bench warrant was issued for Father as his whereabouts were unknown to the probation office. *Id*. On August 26, 2021, Father again violated the PFA order. *Id*. According to the affidavit of probable cause, police were dispatched to Mother's residence because Father yelled at Mother from her back porch about Children being in foster care, called Mother obscenities, and, while fleeing after finding out the police had been called, threatened that he would be back. *Id*. Father was apprehended by the police as he attempted to leave the area, and he later pled guilty to indirect criminal contempt for the violation on September 21, 2021. *Id*. Due to these violations, Father was incarcerated

_____

[4] As best we can discern from the record, the AMEND program is utilized to address issues of domestic violence.

from August 2021, until just one week prior to the termination hearing in November 2022.

On October 11, 2022, CYS filed a petition for the involuntary termination of Father's parental rights to Children pursuant to 23 Pa.C.S.A § 2511(a)(1), (2), (5), (8), and (b). The orphans' court conducted an evidentiary hearing on November 1, 2022, at which time Children were eight and two, respectively. Children were represented by a guardian *ad litem* ("GAL") and separate legal counsel.[5]

The agency presented the testimony of Trevor Donovan, outpatient health therapist for C.S. at Laurel Life; Kelly Felix, foster care case manager at Merakey Foster Care; J.R., pre-adoptive foster parent of Children; and Ashley Vilkas, CYS caseworker. Father was represented by Counsel and testified on his own behalf.

By decrees entered November 3, 2022, the orphans' court involuntarily terminated Father's parental rights to Children pursuant to 23 Pa.C.S.A § 2511(a)(2), (5), (8), and (b). Father, through counsel, timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to

---

[5] In lieu of a brief, the GAL submitted a letter in support of Counsel's petition to withdraw because Father's appeal is wholly frivolous. Legal counsel did not file a brief, but at the close of the hearing on November 1, 2022, she proffered C.S.'s preference that he and his brother remain with foster parents. N.T., 11/1/2022, at 184.

Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*. The orphans' court filed a Rule 1925(a) opinion on January 24, 2023.

On February 21, 2023, Counsel filed an application to withdraw pursuant to ***Anders*** along with a brief expressing his belief that Father's claims are frivolous. This Court has extended the ***Anders*** procedures to appeals taken from decrees terminating parental rights involuntarily. ***See In re Adoption of B.G.S.***, 240 A.3d 658, 661 (Pa. Super. 2020) (***citing In re V.E.***, 611 A.2d 1267, 1275 (Pa. Super. 1992)). Accordingly, we will begin our review by considering counsel's petition to withdraw and the accompanying brief. ***See B.G.S.***, ***supra*** at 661 ("When faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.").

In order to withdraw pursuant to ***Anders***, counsel must: (1) petition the court for leave to withdraw and aver that, after making a conscientious examination of the record, he has determined that an appeal would be frivolous; (2) furnish a copy of the ***Anders*** brief to the appellant; and (3) advise the appellant that they have the right to retain private counsel or bring additional arguments to the court's attention. ***Id***. By way of confirming that client notification has taken place, our precedent requires that counsel provide this Court with a copy of the letter advising the appellant of his or her rights in conformity with ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005). ***See B.G.S.***, ***supra*** at 661.

Our Supreme Court has also set forth substantive requirements for counsel's **Anders** brief, which must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes would arguably support the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. **Id.** (citing and **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009)). Thus, a compliant **Anders** brief should "articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous. **Id**.

Instantly, Counsel filed a petition to withdraw stating that, after reviewing the record, he believes Father's appeal is frivolous. Counsel also attached the letter he sent to Father pursuant to **Millisock**, along with the petition and **Anders** brief, advising of his right to retain new counsel or proceed *pro se* to pursue his appeal.[6] Counsel also filed an **Anders** brief which includes a summary of the procedural history and facts of the case with citations to the record, issues that could arguably support Father's appeal, and Counsel's assessment regarding why the appeal is frivolous with citations to relevant legal authority. Accordingly, we conclude that Counsel complied with the technical requirements of **Anders** and **Santiago**.

---

[6] Father has not retained new counsel or proceeded **pro se** in this Court.

We next must proceed to "'conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel.'" **B.G.S.**, **supra** at 662 (quoting **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015)).

We begin this assessment with the issues enumerated by Counsel:

1. Whether the [t]rial [c]ourt abused its discretion and committed an error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of [Father's] parental rights to [Children] under Section 2511(a) of the Adoption Act[?]

2. Whether the [t]rial [c]ourt abused its discretion and committed an error of law in terminating [Father's] parental rights when the conditions which led to the removal or placement of [Children] no longer existed or were substantially eliminated, thus contravening [S]ections 2511(a) and (b) of the Adoption Act[?]

3. Whether the [t]rial [c]ourt abused its discretion and committed an error of law in determining it would be in [Children's] best interest to have [Father's] parental rights terminated, when [he] loves [Children], [Children] are bonded with him, and if given sufficient time, would be ready, willing, and able to parent [Children] and provide for their needs, thus contravening Section 2511(b) of the Adoption Act[?]

**Anders** Brief at 4-5 (suggested answers omitted).

Our standard of review in this context is well-settled:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed at statute by 23 Pa.C.S.A. § 2511 of the Adoption Act, which necessitates a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination pursuant to Section 2511(a)(1)-(11). *M.E.*, *supra* at 830. If the orphans' court determines that a petitioner has established grounds for termination under at least one of these subsections by "clear and convincing evidence," the court then assesses the petition under Section 2511(b), which focuses primarily upon the child's developmental, physical, and emotional needs and welfare. *Id.* at 830 (citing *In re T.S.M.*,

71 A.3d 251, 267 (Pa. 2013)); **see also** 23 Pa.C.S.A. § 2511(b).  This Court "need only agree with any one subsection of § 2511(a), in addition to § 2511(b), in order to affirm the termination of parental rights." **T.S.M.**, **supra** at 267 (citing **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

In the case *sub judice*, the orphans' court terminated Father's parental rights to Children pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). Instantly, we will analyze the court's termination decree pursuant to Section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A § 2511(a)(2), (b).

With regard to termination of parental rights pursuant to Section 2511(a)(2), we have indicated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021) (quoting *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015)) (internal citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Matter of Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017) (citation omitted). As such, "[a] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re S.C.*, *supra* at 1105 (citation omitted). In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court addressed the relevance of incarceration in termination decisions under Section 2511(a)(2). The *S.P.* Court held that "incarceration is

a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." *Id.* at 828.

In concluding that CYS satisfied Section 2511(a)(2), the court emphasized Father's inability to provide essential care for Children, as follows:

> Father has not shown he has ability to provide safe and stable care for [Children]. Rather than working on the permanency plan goals set out for him to achieve the goal of reunification, Father repeatedly demonstrated a course of abusive conduct towards [Children's] Mother resulting in frequent arrests, convictions for violating the final PFA order and significant periods of incarceration. [Children] have been out of [Father's] care for well over a year and a half and Father's contact with them has been extremely limited and those limits are all the result of his own conduct.

Orphans' Court Opinion, 1/24/2023, at 11 (unpaginated).

The record supports the orphans' court's determination. Indeed, as related *supra*, Father violated the PFA order on multiple occasions during Children's dependency. *See* CYS Exhibit 10. As a result, Father was in prison for approximately fourteen of the twenty months Children were in placement, was released just one week before the termination hearing, and is on probation until November 2024. *See* N.T., 11/1/2022, at 118-119; *see also In re E.A.P.*, 944 A.2d 79, 85 (Pa. Super. 2008) (holding termination under Section 2511(a)(2) is supported by mother's repeated incarcerations

- 12 -

and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

Additionally, it is unclear if Father has a suitable residence for Children because Father stated that he is living with a friend and that he had not yet submitted this home to the agency as the reunification residence. N.T., 11/1/2022, at 120. He further indicated that he was not sure if the agency had run a background check on his friend. *Id*.

Further, from August 2021 to August 2022, Father did not participate in any visits with Children. *Id.* at 143. Rather, Father refused visitation from August 2021 to January 2022 because he did not want Children to see him in prison. *Id.* at 142. Ultimately, Father only participated in seven virtual visits between August 2022 and the termination hearing on November 1, 2022. *Id.* at 143. Father's refusal to obey the PFA order barred any meaningful contact with Children and prevented him from progressing beyond even virtual visits. His conduct also prohibited him from completing the AMEND program; an essential part of Father's goals as the program addresses domestic violence. *Id.* at 97-98. Despite Father's bald assertion that he needs more time, Father had twenty months to fulfill his goals, but he instead opted to violate the PFA order multiple times, which resulted in a lengthy prison sentence and an inability and refusal to provide essential parental care to Children.

Based upon the foregoing, we discern no abuse of discretion by the court in concluding that termination pursuant to Section 2511(a)(2) was warranted with respect to Children. Father's repeated and continued incapacity, abuse, neglect, or refusal due to his incarceration and lack of contact with Children caused them to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. ***See*** 23 Pa.C.S.A § 2511(a)(2). Further, based on Father's actions during Children's dependency and his inability to make meaningful progress towards completion of the permanency goals, it is equally evident that the conditions and causes of Father's incapacity, abuse, neglect, or refusal cannot or will not be remedied. ***See M.E.P.***, ***supra*** at 1272. In issuing this finding, we remain mindful that, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006).

Having determined that there are sufficient grounds for termination pursuant to at least one subsection of 23 Pa.C.S.A. § 2511(a), we now turn to Section 2511(b), which affords "primary consideration" to "the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). In ***Interest of K.T.***, 2023 Pa. Lexis 829, (Pa. June 21, 2023), our High Court held, "a court conducting a Section 2511(b) analysis

must consider more than proof of an adverse or detrimental impact from severance of the parental bond. We emphasize analysis of the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.* at *54-55.

In addition, the *K.T.* Court held that the "Section 2511(b) inquiry must also include consideration of other important factors." *Id.* at *55. While not inventing an exhaustive list of considerations, the Court explained that the inquiry ***must consider and weigh*** certain evidence ***if it is present in the record***, including, but not limited to, "the child's need for permanency and the length of time in foster care consistent with 42 Pa.C.S.[A.] § 6351(f)(9); whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *Id*. (footnote omitted); ***see also id.*** at n.28 (emphasis in original).

The evaluation of a child's bonds is not always an easy task. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).

Nevertheless, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *T.S.M.*, *supra* at 267. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. Specifically, we have observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

Primarily, other than Father's self-serving testimony, no real evidence was presented that Father and Children, who were eight years old and two years old at the time of the hearing, shared a bond. Furthermore, as referenced *supra*, Father did not see or speak to Children for approximately one year while he was incarcerated, and at one point even refused visitation. N.T., 11/1/2022, at 143. Therefore, based on this lack of evidence, it is reasonable to infer that Father and Children did not share a parent child bond. *See K.Z.S.*, *supra* at 762-763.

In determining that termination of Father's parental rights favors Children's needs and welfare under Section 2511(b), the orphans' court stated the following.

> [Children] are finally in a stable environment with proper parenting, with people who are caring, dependable, and dedicated to the promotion of their development. Unlike with Father, who is unable to provide [Children] with a stable home environment, [Children] are now in a home that provides them with consistent

nurturing they need to be healthy and safe with all of their developmental needs being met.

Orphans' Court Opinion, 1/24/2023, at 11-12 (unpaginated).

We discern no abuse of discretion. CYS caseworker, Ms. Vilkas, testified that involuntarily terminating Father's parental rights would not negatively impact Children. *Id.* at 111. She reported that Children are thriving with their pre-adoptive foster parents. *Id.* at 110. Mr. Donovan, outpatient health therapist for C.S., stated that C.S. initially struggled with expressing his emotions, accepting limitations, and coping with anxiety, but he has made noticeable progress. *Id.* at 9. He further emphasized that foster parents are involved in C.S.'s treatment and ensure he obtains the services he needs. *Id.* at 10. Ms. Felix, foster care case manager testified that Children have progressed immensely while with foster parents.

> Q: Since they first started with the foster parents until now, have you seen any changes in [Children], any progress being made by them?
>
> A: Yes. [K.S.] has come a really long way with his speech. He is happy. He plays. He interacts with people. C.S. isn't as angry as what he used to be. He's making relationships. He's making friends in the community, at school. They both seem like they have come quite a long way, yes.
>
> Q: You said K.S. has come a long way with his speech. Is he receiving any specific services for that?
>
> A: He gets speech therapy, yes.
>
> . . .
>
> Q: Is he receiving any other like occupational therapy?

- 17 -

A: Occupational therapy, yes.

Q: What is that to address?

A: I think it's fine motor skills.

Q: Okay. [Foster Parents] have been seeing that that occurs regularly?

A: Yes.

Q: Are [Children] up to date medically and dentally?

A: Yes.

. . .

Q: How would you describe the dynamic in the home between [foster parents] and [Children]?

A: They are a very loving family. They are a family. It's nice to be able to go in and see [Children] in their relationship with [foster parents].

*Id.* at 14-15. Accordingly, the orphans' court did not abuse its discretion in determining that termination best serves the Children's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

Based on our independent analysis, we agree with Counsel that the appeal from the decrees terminating Father's parental rights pursuant to Section 2511(a)(2) and (b) is wholly frivolous and our review of the record does not reveal any overlooked non-frivolous issues.

Counsel's petition to withdraw granted. Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2023